UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.:

TELEMUNDO NETWORK GROUP LLC, a
Delaware limited liability company,

       Plaintiff

v.

ELITE SPORTS AGENCY, LLC, a Florida
limited liability company, and
PUBLICIDADES USA INC., a Florida
Corporation,

       Defendants

## COMPLAINT

     Plaintiff, Telemundo Network Group LLC ("Telemundo") for its Complaint against Defendants, Elite Sports Agency, LLC, and Publicidades USA Inc. ("Defendants") alleges as follows:

## INTRODUCTION

     1.    This is an action by Telemundo to enforce its exclusive license to broadcast in the United States the Confederation of North, Central America and Caribbean Association Football ("CONCACAF") qualifying soccer games leading to the 2018 and 2022 FIFA World Cups in the Spanish Language via television and digital media, to enjoin Defendants from interfering with Telemundo's exclusive license rights, and for damages.

     2.    Telemundo purchased these rights to broadcast the 2018 and 2022 CONCACAF World Cup qualifiers for tens of millions of dollars in December 2014, in an arms-length, well-publicized transaction with non-parties Traffic Sports USA, Inc. ("Traffic") and Media World,

1

LLC ("Media World"). Telemundo plans to broadcast these games as part of its comprehensive coverage of the World Cup qualifying rounds to its millions of viewers in the U.S., and has already invested heavily in the preparation for and promotion of these broadcasts.

3.     Just last month, Telemundo was contacted by Defendant Elite Sports Agency, LLC ("Elite"). Elite purported to be authorized to **re-sell** the broadcast rights to certain CONCACAF qualifying matches to take place in Trinidad & Tobago ("Trinidad"), which Telemundo already had bought and paid for as part of its transaction in December 2014. Telemundo also learned that Elite reached out to Telemundo's competitors to offer to sell **them** the rights belonging to Telemundo.

4.     As Telemundo also learned very recently, Elite and Defendant Publicidades USA Inc. ("Publicidades") claim to have obtained the right to license these matches in Trinidad from non-party the Trinidad & Tobago Soccer Association (the "TTFA"), and they have been working through the TTFA to hinder necessary pre-production work at the soccer stadium in Trinidad, thereby threatening to prevent Telemundo from exercising its rights to broadcast important upcoming matches in Trinidad on March 24 and March 28, 2017.

5.     Defendants' conduct is a brazen attempt to interfere with Telemundo's rights and to coerce Telemundo into paying more for a license that – as Defendants are well aware – Telemundo already purchased in a legitimate, good faith transaction for valuable consideration years ago. Defendants seek to justify their unlawful conduct with allegations made by the TTFA that there were deficiencies in a contract in 2012 whereby TTFA sold the rights that later were acquired by Telemundo in December 2014, multiple links down the contractual chain. Defendants' position is nonsense. Even if a contract upstream from Telemundo's purchase of the rights were deficient in some way, Telemundo is a good-faith, innocent purchaser for value and

its exclusive license must be honored. Indeed, until last month, neither Defendants nor anyone else questioned the legitimacy of Telemundo's license – even when Telemundo, via an affiliated network, broadcast the most recent CONCACAF qualifying match in Trinidad last November. Defendants are engaged in nothing more than a cynical, unlawful shakedown of Telemundo.

## THE PARTIES

6.      Plaintiff, Telemundo, is a limited liability company organized under the laws of the State of Delaware.   As a limited liability company, for federal diversity of citizenship purposes, Telemundo is considered a citizen of any state in which one or more of its members is a citizen.   In determining the citizenship of each member, the same rules apply such that intermediate LLCs are disregarded in the corporate chain until corporations and/or individuals are reached.   Telemundo's sole member is another LLC called Telemundo Media LLC. Telemundo Media LLC has two members, (i) NBC Universal Media LLC and (ii) NBC Subsidiary LLC, whose sole member is NBC Stations Management II LLC, whose sole member is NBC Universal Media LLC (the same entity that is the other member of Telemundo Media LLC). NBC Universal Media LLC's sole member is NBCUniversal LLC.    The members of NBCUniversal, LLC are (i) Comcast Navy Acquisition, LLC, (ii) Comcast Navy Contribution, LLC, (iii) NBCUniversal Enterprise, Inc., and (iv) SNL Entertainment Holdings, Inc., which is incorporated in Delaware and has its principal place of business in Pennsylvania.   The sole member of Comcast Navy Acquisition, LLC is Comcast Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania.   The members of Comcast Navy Contribution, LLC are (i) Comcast SportsNet New England Holdings, LLC, (ii) Comcast SportsNet Philadelphia Holdings, LLC, (iii) Versus Holdings, LLC, (iv) Comcast CHC, LLC, (v) E! Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania;

and (vi) Comcast Contribution Holdings, LLC. The members of Comcast SportsNet New England Holdings, LLC are (i) Comcast SportsNet NE Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania; and (ii) CSNNE Partner, LLC.  The members of Comcast SportsNet Philadelphia Holdings, LLC are (i) Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania; and (ii) Comcast Spectator Holding Company, Inc., a Delaware corporation with its principal place of business in Pennsylvania. The members of Versus Holdings, LLC are (i) Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania; and (ii) E! Holdings, Inc., a Delaware corporation with its principal place of business in Pennsylvania. The sole member of Comcast CHC, LLC is Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania.  The sole member of Comcast Contribution Holdings, LLC is Comcast Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania. The sole member of CSNNE Partner, LLC is Comcast Holdings Corporation, a Pennsylvania corporation with its principal place of business in Pennsylvania.  Thus Telemundo is a citizen of Delaware and Pennsylvania for diversity of citizenship purposes because all of the ultimate members of Telemundo throughout its corporate chain are limited liability companies whose ultimate ownership rests with corporations that are citizens of Delaware and Pennsylvania.

7.     Defendant, Elite, is a Florida limited liability company.  Upon information and belief, its sole member is Ylan Daniel Singer ("Singer"), an individual, who resides in Miami-Dade County Florida and is a citizen of Florida.  Therefore Elite is a citizen of the State of Florida.

4

8.    Defendant, Publicidades, is a Florida corporation with its principal place of business in Miami-Dade County, Florida.  Therefore Publicidades is a citizen of the State of Florida.

## JURISDICTION AND VENUE

9.    This is an action for damages and injunctive relief.  The amount in controversy exceeds $75,000, exclusive of reasonable attorneys' fees, interest, and costs.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there exists complete diversity between the parties and the amount in controversy exceeds the Court's jurisdictional threshold.

10.    Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because it is the district in which the Defendants reside and in which a substantial part of the events or omissions giving rise to the claim occurred.

11.    All conditions precedent to filing this action occurred, have been performed, have been waived, or have otherwise been excused.

## FACTS

12.    Telemundo owns the exclusive Spanish-language rights to broadcast CONCACAF qualifying soccer games leading to the 2018 and 2022 World Cups in the United States via television and digital media (the "Content Rights") pursuant to a Soccer License Agreement (the "Telemundo Agreement") between Telemundo, as the Licensee, and non-parties, Traffic and Media World, which together are the Licensor under the Telemundo Agreement.  A redacted copy of the Telemundo Agreement is attached as Exhibit 1.

13.    For both the 2018 and 2022 CONCACAF qualifying Tournaments, Telemundo's rights extend to:

  a.    All Mexican National Team away qualifiers (other than those played in the United States).

      b.   All U.S.A. National Team away qualifiers (other than those played in Mexico).

      c.   All other CONCACAF countries' home qualifiers, except Mexico and the United States.

Exhibit 1, Telemundo Agreement at § 1; Schedule A.

14.      CONCACAF is the administrative body for international soccer in the Western Hemisphere (excluding South America).  CONCACAF manages competitions, training courses and promotes the sport of soccer throughout its territory and is a member of FIFA, the global administrative body for soccer.

15.      CONCACAF does not control or commercialize the rights to broadcast the soccer games and tournaments it manages.  Rather, those rights originate with the 41 national soccer associations that comprise CONCACAF's membership.  Those 41 member associations are organized into three sub regions: the North American Football Union, the Union Centro Americana de Futbol, and the Caribbean Football Union (the "CFU").

16.      The CFU is the official governing body of Caribbean football associations and federations. The CFU is comprised of 31 Member Associations.  The CFU was established in January 1978 and its Member Associations compete in CFU and CONCACAF competitions.

17.      The TTFA is one of the CFU's member associations and is the governing body of football in Trinidad and Tobago. It is based in Port of Spain, Trinidad. It is a member of FIFA and CONCACAF.   According to its website, the TTFA was founded in 1908.  After Trinidad and Tobago achieved independence in 1962, the TTFA became a member of FIFA and CONCACAF in 1963.  According to the CFU's website, the TTFA has been a member of the CFU since 1964.

18.      On information and belief, in 1998, the name of the TTFA was changed to the Trinidad and Tobago Football Federation (the "TTFF"), and the TTFA operated under this name

until July 2013, when it became known once again as the TTFA.  At all relevant times there has been a continuity of the organization now known as the TTFA, and the TTFA is legally bound by and responsible for the actions taken and contracts signed while the organization was called the TTFF.

19.     Pursuant to Section 3.2 and 3.4 of the CFU Statute, the organizing document of the CFU, in order to become and to remain a member of the CFU, the TTFA was and is obligated to agree to comply with the Statute and regulations of the CFU.  A true and correct copy of the CFU Statute in effect since May 22, 2012, is attached as Exhibit 2.

20.     The TTFA was represented at the CFU's May 22, 2012 35th Annual Congress at which the current version of the CFU Statute was adopted.

21.     The CFU Statute governs the relationship between the CFU and its member associations, including the TTFA, with respect to the broadcast rights over soccer games. Section 8.2 states:

> The CFU and the Member Associations shall have the exclusive rights to broadcast and use, as well as authorize for broadcast and use, by picture, sound or other data carriers of any kind (including data carriers which have yet to be developed), matches which come within their jurisdiction, either live or recorded, in whole or as excerpts.

And Section 8.1 states:

> The CFU shall exploit all rights which it owns or shares with third parties, such as property rights of any type, intellectual property rights and rights for audio-visual and sound-broadcasting transmissions by picture or data carrier of any kind (including all means of transmitting computer images, with or without sound, such as Internet, on-line services or the like, whether existing already or not). This includes the production, duplication, dissemination and broadcasting of pictures, sound or data carriers of any kind by the CFU alone or with third parties.

22.     Thus, pursuant to these provisions, the CFU had the right to exploit the rights to broadcast games of the CFU and its Member Associations, pursuant to the CFU Statute.

23.     In addition, on or about August 29, 2012, the TTFA (then known as the TTFF) entered into a written Transfer of Broadcast Rights Agreement with the CFU (the "CFU-TTFA Agreement"), pursuant to which the TTFA irrevocably transferred to the CFU the exclusive right to broadcast the home games to be played by the national soccer team of Trinidad and Tobago (the "Trinidad National Team") in the 2018 and 2022 CONCACAF World Cup qualifying games.  A true and correct copy of the CFU-TTFA Agreement is attached as Exhibit 3.

24.     In the CFU-TTFA Agreement, the TTFA acknowledged and represented that:

  d.   The TTFA is "a full member" of the CFU and it "owns the Rights (as defined below) associated with the home matches for the 2018 FIFA World Cup qualifying matches and the 2022 FIFA World Cup qualifying matches." Exhibit 3, CFU-TTFA Agreement at ¶ 2.

  e.   The TTFA "was present and duly represented on 22 May 2012 at the XCXXV CFU Ordinary Congress (the "Congress") in Budapest, Hungary at which the majority of the membership of the CFU agreed that the CFU should enter into negotiations," to commercialize the rights to broadcast said home games by negotiating to sell them to  Traffic.  *Id*. at ¶¶ 3, 4.

  f.   The TTFA "entered into this Agreement without coercion and are in possession of all our faculties and with the full knowledge that the CFU will in turn be transferring the Broadcasting Rights to Traffic."  *Id*. at ¶ 8.

25.     In addition, the TTFA specifically agreed as follows:

The parties agree that **any agreement or arrangement negotiated by the CFU with Traffic or any other third party with respect to such Rights will be binding upon the members and no member may unilaterally opt out of the provisions thereof**.

*Id*. at ¶ 4 (emphasis added).

26.     Both the CFU Statute and the CFU-TTFA Agreement were intended by the TTFA and the CFU to allow the CFU to package the Trinidad National Team home games together with the home games of the other 31 CFU Member Associations' national teams for resale to one or more commercial entities, such as Traffic, who would, in turn, commercialize the rights by licensing them to broadcasters, like Telemundo.

27.     In this case, the CFU sold the rights to broadcast the home games of its 31 Member Associations' national teams to Traffic in or around August 2012 pursuant to a written agreement between the CFU and Traffic (the "Traffic-CFU Agreement").  A true and correct copy of the Traffic-CFU Agreement is attached as Exhibit 4.  Traffic partnered with Media World to commercialize the rights through licenses to broadcasters.

28.     Traffic and Media World, in turn, licensed the Content Rights at issue here to Telemundo on an exclusive basis pursuant to the Telemundo Agreement, which was signed in December 2014.

29.     In exchange for these exclusive Content Rights, Telemundo became obligated to pay Traffic and Media World a total of more than $30 million for qualifying CONCACAF games for the 2018 World Cup, of which almost three-quarters has already been paid.  The next installment in the amount of several million dollars is due no later than March 31, 2017.

30.     Telemundo is thus a bona fide purchaser for value of the Content Rights. Telemundo purchased the Content Rights in good faith.

31.     Telemundo's purchase of the Content Rights was widely-publicized and is well-known throughout the world of international soccer.  Telemundo's purchase of the Content Rights from Traffic and Media World was announced publicly by Telemundo at the annual broadcasting industry "upfront" presentations in May 2015, and carried widely in both English

and Spanish-language media.  A copy of Telemundo's press release regarding the purchase of the Content Rights is attached as Exhibit 5.

32.     The TTFA and the CFU were informed and became aware of Telemundo's purchase of the Content Rights from Traffic soon after the date of the Telemundo Agreement.

33.     As contemplated by the Telemundo Agreement, Telemundo has already begun broadcasting CONCACAF qualifying games, including home games of the Trinidad National Team for the 2018 World Cup, the most recent of which was played in November 2016.

34.     On or about February 7, 2017, the TTFA purported to enter into an agreement with Elite to allow Elite to market and sell the broadcast rights to the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games to broadcasters (the "Elite-TTFA Agreement").

35.     At the time that Elite and the TTFA entered into the purported Elite-TTFA Agreement, Elite was already aware that the TTFA had previously sold the very same rights to the CFU, which in turn had sold the rights to Traffic, which in turn had sold the Content Rights to Telemundo pursuant to the Telemundo Agreement.

36.     In connection with the purported Elite-TTFA Agreement, the TTFA provided two letters dated February 7, 2017 to Elite (the "Elite Letters"), which states:

> This is to confirm that the Trinidad & Tobago Football Association (TTFA) is confirming to all broadcasters that due to the significant irregularities in the process of the previous sale of the World Cup Qualifying TV Rights by The Caribbean Football Union to TRAFFIC and TRAFFIC's subsequently [*sic*] sale of same to broadcasters, the TTFA has decided to license the rights to ELITE SOCCER AGENCY LLC and therefore all previous arrangements and/or alleged agreements are not valid.  ELITE SOCCER AGENCY LLC will have the sole and exclusive transmission rights, any deal signage rights and any placement of cameras at all games being granted to the licensee herein.

True and correct copies of the Elite Letters are attached as Composite Exhibit 6.

37.     Importantly, through the Elite Letters, the TTFA (and by adoption Elite) admitted that they were both aware at the time of the Elite-TTFA Agreement that (a) the TTFA had previously sold the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games to the CFU; (b) the CFU sold rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games to Traffic; and (c) Traffic sold the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games to broadcasters, like Telemundo, who purchased them in good faith and for value.

38.     Telemundo assumes that the reference to "irregularities" in the Elite Letter is a reference to the fact that some former officials of Traffic, Media World and the CFU and were among the more than 40 individuals and entities who were indicted in the highly publicized criminal case that U.S. federal prosecutors brought in 2015 over FIFA-related corruption.  No one associated with Telemundo was charged or even mentioned in the indictment or superseding indictment filed by federal prosecutors. At the time it purchased the Content Rights in good faith and for tens of millions of dollars in value, Telemundo was not aware of any allegations of wrongdoing by anyone at Traffic, Media World or the CFU. Telemundo negotiated the Telemundo Agreement with Traffic and Media World in good faith and at arms' length.  Neither the Defendants in this case nor anyone else has brought to Telemundo's attention any evidence that any court has invalidated any of the contracts among the TTFA, the CFU and Traffic.

39.     As a part of the Elite-TTFA Agreement, the TTFA agreed to indemnify Elite from expected claims by Traffic and its licensees, including Telemundo (the "Elite Indemnity").  A true and correct copy of the Elite Indemnity is attached as Exhibit 7.  The Elite Indemnity States:

> This is to confirm that the Trinidad & Tobago Football Association (TTFA) shall indemnify, defend and hold harmless Licensee [Elite], its directors, officers,

partners, members, employees, agents, owners, parents, Licensees, subsidiaries, successors and assigns of each (collectively the "The [*sic*] TTFA Indemnified Parties") from and against any and all claims, liabilities costs and expenses (including without limitation, reasonable attorneys' and experts' fees and court cost) arising out of the Traffic claim that it owns or has owned the Transmission Rights and the Field Signage Rights subject of this agreement.

Exhibit 7, Elite Indemnity.

40.     The Elite Indemnity is a further admission by the TTFA and Elite that at the time of the Elite-TTFA Agreement they were both aware that (a) the TTFA sold the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games to the CFU; (b) the CFU sold rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games to Traffic; and (c) Traffic sold the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games to broadcasters, like Telemundo, who purchased them in good faith and for value.

41.     The TTFA's attempt to resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games constitutes a breach of the CFU-TTFA Agreement.  Similarly, the TTFA's attempt to resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games also causes CFU to be in breach of the Traffic-CFU Agreement.  Finally, the TTFA's attempt to resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games causes Traffic and Media World to be in breach of the Telemundo Agreement.

42.     On information and belief, under Defendants' agreements with  the TTFA Agreement, Elite and Publicidades also have caused the TTFA to threaten to prevent a third-party production company from conducting work at the stadium in Trinidad  that will be needed

for Telemundo to broadcast the games.  Thus, not only do Elite's actions threaten to rob Telemundo of the exclusive right to broadcast the games, Elite (through the TTFA) is actively interfering with and attempting to prevent Traffic from producing the games in order to prevent Telemundo from broadcasting them at all.

43.     Elite's attempt to purchase and resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games already exclusively owned by Telemundo constitutes tortious interference with the Telemundo Agreement.  Likewise, Elite's efforts to prevent Telemundo from broadcasting those games constitutes tortious interference with the Telemundo Agreement.

44.     As set forth above, Elite was aware of the Telemundo Agreement at the time it was signed in December 2014, or soon thereafter. In addition, Telemundo emphasized to Elite and Publicidades last month the existence of the Telemundo Agreement and that their attempts to re-sell the rights to games in Trinidad were an interference with Telemundo's exclusive license and its rights under the Telemundo Agreement.

45.     Elite's actions were taken with the intent of interfering with or disrupting the Telemundo Agreement, in that Elite's actions are intended to deny Telemundo the exclusive broadcast rights to the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games, which Telemundo purchased from Traffic in good faith and for valid consideration under the Telemundo Agreement and to prevent Telemundo from broadcasting those games at all.

46.     Elite's interference with the Telemundo Agreement is not legally justified. As Elite and Publicidades were informed, Telemundo acquired the exclusive U.S. Spanish-language broadcast rights to the games in Trinidad in good faith and for valuable consideration. Further,

Telemundo is not aware of any court ruling in any jurisdiction that invalidated the grant of rights from the TTFA to the CFU, from the CFU to Traffic, or from Traffic to Telemundo. Moreover, on information and belief, the TTFA has never returned the money it was paid in exchange for the rights.

47.     Elite has attempted to resell to broadcasters the purported rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games it received from the TTFA.  Indeed, starting on February 9, 2017, Elite's CEO, Ylan Singer, contacted Telemundo multiple times to attempt to convince Telemundo to purchase from Elite the broadcast rights that Telemundo already owns.  In email correspondence, Mr. Singer provided copies of the Elite Letters and Indemnity.  True and correct copies of Mr. Singer's emails and attachments, along with a certified translation from Spanish to English, are attached as Composite Exhibit 8.  Further, on February 15 and 16, 2017, Telemundo received two emails from Santiago Martinez, a sports television professional of Nexus Sports, urging Telemundo to contact Mr. Singer about the CONCACAF World Cup qualifying games in Trinidad as Mr. Martinez had already begun shopping the rights to other broadcasters on Mr. Singer's behalf. A true and correct copy of Mr. Martinez's emails, along with a certified translation from Spanish to English, is attached as Exhibit 9.

48.     Either Elite or TTFA or both have further contracted with Publicidades for Publicidades to attempt to resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games to broadcasters.  On February 24, 2017, Publicidades's CEO, Francisco Salcedo, contacted Telemundo, again to try to convince Telemundo to purchase the rights that it already owns and to suggest that Telemundo,

Publicidades and the TTFA's President, David John-Williams, meet in Miami to discuss the purchase.  A true and correct copy of Mr. Salcedo's email is attached as Exhibit 10.

49.     Publicidades's attempt to resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games constitutes tortious interference with the Telemundo Agreement, for the same reasons that apply to Elite and are set forth in paragraphs 42 to 46, above.  Publicidades was aware of the Telemundo Agreement. Publicidades's actions were taken with the intent of interfering with or disrupting the Telemundo Agreement.  Publicidades's interference with the Telemundo Agreement is not legally justified.

50.     In addition to communicating with defendants Elite and Publicidades to protest their attempts to sell the rights to games for which Telemundo owns the broadcast license, Telemundo also has explicitly attempted to avoid litigation by contacting the TTFA and asking for assurance that the TTFA will not interfere with Telemundo's valid and exclusive broadcast rights both in Trinidad and in the United States. However, the TTFA has not provided Telemundo with such assurance.

51.     International soccer is the most popular and highest rated sport broadcast by Telemundo, and Telemundo's ability to broadcast an extensive lineup of CONCACAF World Cup qualifying games, including the games in Trinidad, is essential to its business.  Because advertisers and viewers expect Telemundo to carry the March 2017 Games as part of its lineup of soccer coverage, Telemundo would suffer irreparable harm to its reputation and goodwill if it were prevented from broadcasting the Trinidad National Team's March 2017 home games against Panama and Mexico, both of which have a large following among U.S. Hispanic viewers, the consumers of the U.S. Spanish-language television market.  Likewise, Elite's and Publicidades's ongoing attempts to re-sell the rights that Telemundo already owns exclusively

stands to irreparably harm Telemundo's goodwill and business reputation by causing viewers and advertisers to question whether Telemundo can deliver the exclusive programming it has promised.

**COUNT I**
**TORTIOUS INTERFERENCE WITH CONTRACT AND**
**WITH ADVANTAGEOUS BUSINESS RELATIONS**

52.     Telemundo reincorporates and realleges the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

53.     Telemundo, on the one hand, and Traffic and Media World, on the other hand, are parties to the Telemundo Agreement.

54.     The Telemundo Agreement is a valid, binding contract.

55.     The Telemundo Agreement requires, among other things, Traffic and Media World to:

> g.   provide Telemundo the exclusive right to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games in the Spanish language in the United States on television and all digital media (Telemundo Agreement at § 1, Schedule A, Schedule B at § 2);
>
> h.   deliver a video feed of the games (*id*. at § 5.1); and
>
> i.   produce the video feed of the games (*id*. at 5.2).

56.     Telemundo also has an advantageous business relationship with Traffic and Media World for broadcast of the 2018 and 2022 World Cup CONCACAF qualifying games.

57.     Elite induced the TTFA to purport to resell to it the same Content Rights already owned by Telemundo with respect to the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games.  Elite has further attempted to resell to broadcasters the

purported rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games it purports to have received from the TTFA.

58.     Elite's attempts to purchase and then resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games constitutes tortious interference with the Telemundo Agreement.  Elite was aware of the Telemundo Agreement at the time it attempted to purchase and resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games.  Elite's actions were taken with the intent of interfering with or disrupting the Telemundo Agreement. Elite interference with the Telemundo Agreement is not legally justified.

59.     Publicidades induced Elite or the TTFA or both to purport to resell to it the same Content Rights already owned by Telemundo with respect to the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games.  Publicidades has further attempted to resell to broadcasters the purported rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games.

60.     Publicidades's attempt to resell the rights to broadcast the Trinidad National Team's 2018 and 2022 World Cup CONCACAF qualifying home games constitutes tortious interference with the Telemundo Agreement.  Publicidades was aware of the Telemundo Agreement.  Publicidades's actions were taken with the intent of interfering with or disrupting the Telemundo Agreement.  Publicidades's interference with the Telemundo Agreement is not legally justified.

61.     This interference with the Telemundo Agreement by Elite and Publicidades has proximately caused damage to Telemundo.

62.     The harm to Telemundo from this interference cannot be adequately remedied at law.  Indeed, the parties to the Telemundo Agreement acknowledged that irreparable injury would result from any breach of failure to perform the terms of the Telemundo Agreement:

> The parties agree that irreparable injury, for which an adequate legal remedy does not exist, will occur if any of the provisions of this Agreement are not performed in accordance with their specific terms or were otherwise breached.  Accordingly, the parties agree that, in addition to any other remedy to which it may have at law or in equity, the non-breaching party will be entitled to seek an injunction to prevent breaches or threatened breaches of this Agreement and to enforce specifically the terms and provisions hereof in those courts having jurisdiction pursuant to Section 15.2.

Exhibit 1, Telemundo Agreement at Schedule B, § 15.3.

Wherefore, Telemundo respectfully requests that the Court grant the following relief against Defendants, Elite and Publicidades:

(a) injunctive relief enjoining the TTFA, Elite and Publicidades from further interference with the Telemundo Agreement;

(b) judgment for damages in an amount to be proven including prejudgment interest and additional interest accruing after judgment;

(c) such other relief as the Court deems just and proper.

Date:  March 14, 2017                    Respectfully submitted,
                                         GREENBERG TRAURIG, P.A.
                                         *Attorneys for Plaintiff Telemundo Network Group LLC.*
                                         333 SE 2nd Avenue, Suite 4400
                                         Miami, Florida 33131
                                         Telephone: (305) 579-0500
                                         Facsimile: (305) 579-0717

                                         /s/ Eliot Pedrosa
                                         ELIOT PEDROSA, ESQ.
                                         Florida Bar No. 0182443
                                         pedrosae@gtlaw.com
                                         ANGELA KORGE, ESQ.
                                         Florida Bar No. 125419
                                         korgea@gtlaw.com

JS 44 (Rev. 07/16) FLSD Revised 07/01/2016

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION  *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES  *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)*          *and One Box for Defendant)*

|                                          | PTF | DEF |                                                                    | PTF | DEF |
|------------------------------------------|-----|-----|--------------------------------------------------------------------|-----|-----|
| Citizen of This State                    | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State         | ☐ 4 | ☐ 4 |
| Citizen of Another State                 | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State     | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country  | ☐ 3 | ☐ 3 | Foreign Nation                                                     | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Med. Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

## V. ORIGIN  *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (See VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation Transfer
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Multidistrict Litigation – Direct File
☐ 9 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)

*(See instructions):* a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO

JUDGE:                                              DOCKET NUMBER:

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $ 

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

DATE                    SIGNATURE OF ATTORNEY OF RECORD

*s/Eliot Pedrosa*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          IFP          JUDGE          MAG JUDGE

JS 44   (Rev. 07/16) FLSD Revised 07/01/2016

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

   The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.       **(a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

         (b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

         (c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.      **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

III.     **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV.      **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

V.       **Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Refiled (3) Attach copy of Order for Dismissal of Previous case. Also complete VI.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

Remanded from Appellate Court. (8) Check this box if remanded from Appellate Court.

VI.      **Related/Refiled Cases**.  This section of the JS 44 is used to reference related pending cases or re-filed cases. Insert the docket numbers and the corresponding judges name for such cases.

VII.     **Cause of Action**.  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.            Example: U.S. Civil Statute: 47 USC 553
                                                         Brief Description: Unauthorized reception of cable service

VIII.    **Requested in Complaint**.  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT
## SOUTHERN  DISTRICT OF  FLORIDA

## SUMMONS IN A CIVIL CASE

TELEMUNDO NETWORK GROUP LLC, a
Delaware limited liability company,

      Plaintiffs,

v.

ELITE SPORTS AGENCY, LLC, a Florida limited
liability company, and PUBLICIDADES USA
INC., a Florida Corporation,

      Defendants.

CASE NUMBER:    17-CV-20952-XXXX

TO:    Elite Soccer Agency, LLC
       c/o Ylan Daniel Singer, Sr., Registered Agent
       20700 W. Dixie Highway
       Miami, FL  33180

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY:

**Eliot Pedrosa, Esq.**
**Greenberg Traurig, P.A.**
**333 SE 2nd Avenue, Suite 4400**
**Miami, Florida 33131**
**Telephone Number (305) 579-0500**

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of
service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your
answer with the Clerk of this Court within a reasonable period of time after service

_____      _____
CLERK                                    DATE

_____
(BY) DEPUTY CLERK

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and Complaint was made by me[1] | DATE |
| NAME OF SERVER (*Print*) | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served:_____
_____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:_____
_____

☐  Return unexecuted:_____
_____

☐  Other (*specify*):_____
_____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |
| DECLARATION OF SERVER | | |

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on_____      _____
                        *Date*                                              *Signature of Server*

                                                         _____
                                                         _____
                                                         *Address of Server*

---

[1]   As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# UNITED STATES DISTRICT COURT
## SOUTHERN  DISTRICT OF  FLORIDA

## SUMMONS IN A CIVIL CASE

TELEMUNDO NETWORK GROUP LLC, a
Delaware limited liability company,

       Plaintiffs,

v.

ELITE SPORTS AGENCY, LLC, a Florida limited
liability company, and PUBLICIDADES USA
INC., a Florida Corporation,

       Defendants.

CASE NUMBER:   17-CV-20952-XXXX

TO:   Publicidades U.S.A., Inc.
      c/o Francisco Salcedo, Registered Agent
      1025 Corkwood Street
      Hollywood, FL  33019

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY:

**Eliot Pedrosa, Esq.**
**Greenberg Traurig, P.A.**
**333 SE 2nd Avenue, Suite 4400**
**Miami, Florida 33131**
**Telephone Number (305) 579-0500**

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service

_____
CLERK

_____
(BY) DEPUTY CLERK

_____
DATE

| RETURN OF SERVICE | |
|---|---|
| Service of the Summons and Complaint was made by me[1] | DATE |
| NAME OF SERVER (*Print*) | TITLE |

*Check one box below to indicate appropriate method of service*

☐   Served personally upon the defendant.  Place where served:_____

_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

     Name of person with whom the summons and complaint were left:_____

_____

☐   Return unexecuted:_____

_____

☐   Other (*specify*):_____

_____

| STATEMENT OF SERVICE FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

| DECLARATION OF SERVER |
|---|

     I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on_____     _____
              *Date*                              *Signature of Server*

                                             _____

                                             _____
                                             *Address of Server*

---

[1]   As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.